UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD WHITEHILL,

       Plaintiff,

v.                                                                       Case No. 1:04-CV-576
                                                                         Hon. Hugh W. Brenneman, Jr.
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on September 9, 1952 and has obtained a GED (AR 62, 692, 727).[1] Plaintiff stated that he became disabled on August 15, 1995 (AR 62). He identified his disabling condition as severe injury to right hand, herniated lumbar disc and depression (AR 65). Plaintiff had previous employment as a welder (AR 695). After administrative denial of plaintiff's claim, Administrative Law Judge (ALJ) Larry A. Temin reviewed plaintiff's claim *de novo* and entered a decision denying these claims on November 23, 1998 (AR 24, 321-31).

Plaintiff filed a request for review of the decision by the Appeals Council, which reviewed the decision and issued an order of remand directing the ALJ to consider new evidence and obtain updated medical records as appropriate (AR 24, 338-40). Plaintiff had a second

---

[1] Citations to the administrative record will be referenced as (AR "page #").

administrative hearing on February 1, 2002 before ALJ Sharon A. Bauer (AR 24, 720-68). ALJ Bauer reviewed plaintiff's claim and entered a decision denying the claims on February 27, 2002 (AR 24-35). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)). Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)). Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Abbott*, 905 F.2d at 923.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).

3

However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff was insured for benefits through December 31, 2000 and that he had not engaged in substantial gainful activity since the alleged onset of disability (AR 33). Second, the ALJ found that plaintiff had "degenerative disc disease, non-insulin-dependent diabetes mellitus, hypertension, peripheral vascular disease, obesity, stress fracture of the right wrist, depression, borderline intellectual functioning, and personality disorder, not otherwise specified, a combination of impairments considered 'severe'" (AR 33). In evaluating the medical evidence, the ALJ incorporated the medical summaries and evaluations contained in Judge Temin's November 23, 1998 decision (AR 26, 321-31).

At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 33). The ALJ decided at the fourth step that plaintiff had the residual functional capacity:

> to perform work except for lifting, carrying, pushing, and pulling more than 20 pounds occasionally and ten pounds frequently. The claimant can sit, stand, and walk at least six hours each in an eight-hour workday. He can occasionally climb, balance, stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to

>vibration. He can only occasionally operate right hand controls and right foot pedals. He cannot perform repetitive, strenuous work with the right wrist. He can perform simple, unskilled, routine tasks. The claimant has moderate limitations in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and set realistic goals or make plans independently of others. The claimant has mild to moderate limitations in the ability to interact appropriately with the general public, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and respond appropriately to changes in the work setting. He has mild limitations in his ability to remember locations and work-like procedures; make simple work-related decisions; understand, remember and carry out simple instructions; ask simple questions or request assistance; be aware of normal hazards and take appropriate precautions; and travel in unfamiliar places or use public transportation.

(AR 31). The ALJ further concluded that plaintiff was unable to perform his past relevant work (AR 34).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of light work (AR 34). Specifically, the ALJ found that an individual with plaintiff's limitations could perform the following jobs in Michigan: an assembler (7,000 jobs); an inspector (6,000 jobs); a sorter (6,000 jobs); a machine operator (5,000 jobs); an attendant (4,000 jobs); a clerk (3,000 jobs); a dietary aide (3,000 jobs); and a janitor (3,000 jobs) (AR 33-34). The ALJ also found plaintiff's allegations regarding his limitations were not totally credible (AR 33). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social

5

Security Act at any time through the date of the decision and entered a decision denying benefits (AR 34-35).

## III. ANALYSIS

Plaintiff raises three errors on appeal.

> **A. The ALJ improperly rejected the opinions of Dr. Godwin and Dr. Tava pursuant to the provisions of 20 C.F.R. § 404.1527. She specifically failed to determine whether these opinions were supported by the substantial medical evidence of record and based her decision on part of the evidence while disregarding other pertinent evidence.**

### 1. Dr. Godwin

In October 1996, David Godwin, M.D., completed "medical capacities evaluation" forms, in which he determined that plaintiff met the requirements of Listings 12.04 (affective disorders) and 12.06 (anxiety related disorders) (AR 133-40). The doctor diagnosed plaintiff as suffering from an adjustment disorder, an affective disorder (Listing 12.04) and an anxiety related disorder (Listing 12.06) (AR 136-37, 139). The ALJ cryptically rejected Dr. Godwin's opinions as follows:

> Despite the reports of Dr. Godwin in October 1996 (Exhibits 1F and 2F), the undersigned finds that the claimant's impairments do not meet the requirements of listings 12.04, 12.05, and 12.08 because the Part B and Part C criteria are not met (see discussion below). Further, it is interesting to note that Dr. Godwin reported that he had not even seen the claimant, but had only reviewed the case file.

(AR 26). In addition, the ALJ briefly referred to the opinion expressed by the medical expert, psychologist Dr. Andert, who testified that plaintiff suffered from an affective disorder, a personality disorder and borderline intellectual functioning, and that plaintiff had only mild to moderate limitations in functioning for the Part B criteria of Listings 12.04 and 12.08 (AR 28-29).

6

The ALJ's evaluation of Dr. Godwin's opinion is incomplete. Although the ALJ viewed Dr. Godwin's opinions as not meeting the requirements of Listing 12.04, 12.05 (mental retardation) and 12.08 (personality disorders), she did not mention the doctor's opinion regarding the anxiety related disorder (Listing 12.06) or specifically address the Part B or C criteria for the Listings. The Commissioner is required to provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

Here, the ALJ failed to articulate her reasons for rejecting Dr. Godwin's opinions. First, the ALJ did not address Dr. Godwin's conclusion that plaintiff met the requirements of Listing 12.06. Second, the ALJ did not discuss how plaintiff failed to meet the Part B and C criteria for Listing 12.04. Third, it is unclear whether the ALJ viewed Dr. Godwin as a treating physician or a non-examining physician. The record reflects that plaintiff had been treated at Dr. Godwin's clinic in September and October 1996 (AR 141-60). While Dr. Godwin did not see plaintiff, he had access to the clinic records and was a consulting psychiatrist (AR 136, 147, 150). The ALJ should clarify whether Dr. Godwin's opinion was that of a treating physician or a nonexamining physician and then explain the weight given to his opinions. *See* 20 C.F.R. § 404.1502 (defining a treating source, a nonexamining source and a nontreating source); 20 C.F.R. § 404.1527 (explaining the weight to be given to each type of medical source). In short, the ALJ has failed to set forth reasons for rejecting Dr. Godwin's opinion, especially with respect to Listings 12.04 and 12.06. Accordingly, this matter should be reversed and remanded to re-evaluate Dr. Godwin's opinions.

**2.      Dr. Tava**

Next, plaintiff contends that the ALJ improperly rejected the report of a consultative examiner, Edward Tava, Ed. D. L.P. Plaintiff's Brief at 5, 11-12. Dr. Tava examined plaintiff on August 8, 2001 (AR 519-32) and diagnosed him as suffering from major depression recurrent and severe, personality disorder and borderline intellectual functioning (AR 523). Dr. Tava stated that plaintiff's psychological testing indicated a verbal IQ of 60, a performance IQ of 54 and a full scale IQ of 53 (AR 523). However, Dr. Tava felt that the low IQ scores were "most likely due to the state of his major depression" and estimated that plaintiff's IQ was probably between 65 and 75 (AR 523). The ALJ considered Dr. Tava's opinion that plaintiff had "significant mental limitations that would affect his ability to work," but apparently rejected this opinion as "inconsistent with the doctor's own report" (AR 31-32). In summarizing Dr. Tava's report, the ALJ repeated Dr. Tava's observations that plaintiff's reality contact was appropriate, that he was well oriented, that it was possible he might attempt to exaggerate some of his symptoms and that he "apparently has made a decision to stay where he is in life and simply 'waddle in self pity'" (AR 32, 519-32). However, other than pointing out these observations, the ALJ did not address plaintiff's low IQ scores.

Dr. Tava stated that plaintiff was "intellectually dull" and "possibly of mild or borderline retardation" (AR 523). Based upon Dr. Tava's test results, plaintiff would meet the requirements of Listing 12.05 (mental retardation) (requiring a valid performance or full scale IQ of 59 or less). *See* Listing 12.05B. Dr. Tava apparently questioned the validity of the IQ scores, suggesting that plaintiff was functioning in the 65 to 75 range (AR 523). Assuming Dr. Tava's higher estimated IQ of 65 to 75, plaintiff could still meet the requirement of Listing 12.05(C) ("[a]

valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function").

Plaintiff's IQ tests indicate that he suffers from mental retardation. The ALJ has not articulated sufficient reasons for rejecting Dr. Tava's opinions and the test results. On remand, the ALJ should re-evaluate Dr. Tava's opinion, specifically whether plaintiff meets the requirements of Listing 12.05. If plaintiff's IQ testing was not valid (as Dr. Tava suggests), then plaintiff should be re-tested to obtain valid test results.

> **B.      The ALJ improperly rejected the uncontradicted opinion of long time treating physician Paul A. Wagner, D.O., pursuant to the provisions of 20 C.F.R. § 404.1527 and the treating physician rule.**

Next, plaintiff contends that the ALJ improperly rejected the opinions expressed by his treating physician, Dr. Wagner. A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

9

inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Id.*, *quoting* 20 C.F.R. § 404.1527(d)(2) (1997). In summary, the opinion of a treating physician is entitled to great weight, but must be supported by sufficient clinical findings and be consistent with the evidence. *See Melton v. Commissioner of Social Security*, No. 98-5671, 1999 WL 232700, *4 (6th Cir. April 12, 1999); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate "good reasons" for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

### 1. Dr. Wagner's opinion that plaintiff is disabled

The ALJ could properly reject Dr. Wagner's opinions from December 1996, October 2000, and July 2001 that plaintiff was disabled and could not work on a sustained, full-time basis (AR 31). Although Dr. Wagner was a treating physician, the ALJ was not bound by the doctor's conclusion that plaintiff was unable to work. *See* 20 C.F.R. § 404.1527(e)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled' ). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Servs.*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

### 2. Dr. Wagner's evaluation

In a "physical capacities evaluation medical assessment" from December 1996, Dr. Wagner found that plaintiff could sit less than one hour in an 8-hour workday, stand and/or walk less than one hour in an 8-hour workday, never lift up to 5 pounds, was unable to perform grasping,

pushing and pulling of arm control and unable to perform fine manipulation (AR 208-09). Dr. Wagner also stated that plaintiff could not perform the physical requirements for sedentary work (AR 211). The doctor diagnosed plaintiff as suffering from carpal tunnel syndrome, hypertension, degenerative joint disease, bulging disc, depression, spinal stenosis and anxiety (AR 213). In a sworn statement given in October 2000, Dr. Wagner testified that he had treated plaintiff at least 40 or 50 times from May 28, 1997 through October 2000 (AR 390). Dr. Wagner stated that he has treated plaintiff for myocardial infarction, depression, anxiety, bad insomnia, hypertension, high cholesterol, degenerative joint disease of his right wrist, degenerative disc disease, a herniated disc, diabetes and diabetic retinopathy (AR 387-94).

The ALJ concluded that Dr. Wagner's opinions were not supported by the evidence (AR 31). The ALJ observed that Dr. Wagner was a family practitioner, not a specialist (AR 31). The ALJ also pointed out that there is no evidence of retinopathy, no objective evidence to support an impairment due to carpal tunnel syndrome and no evidence that plaintiff suffered a myocardial infarction (AR 31, 322-29).[2] Although Dr. Wagner has treated plaintiff for a number of years, his conclusions are not consistent with the medical record. Accordingly, the ALJ could properly discount Dr. Wagner's opinions.

### C. The ALJ failed to evaluate subjective complaints pursuant to 20 C.F.R. § 404.1529.

Finally, plaintiff contends that the ALJ failed properly evaluate his subjective complaints. Plaintiff's Brief at 14-15. The ALJ found that plaintiff's activities of daily living did

---

[2] The court notes a discrepancy between Dr. Wagner's sworn statement and the medical records. Dr. Wagner stated that he first examined plaintiff on May 28, 1997 (AR 390). This statement is inconsistent with the medical records, which indicate that Dr. Wagner saw plaintiff in August 1995 (AR 207).

not support a finding of disability (AR 29-30).  Plaintiff disputes the ALJ's characterization of the evidence regarding his daily activities.  Plaintiff's Brief at 15.  Plaintiff also contends that the ALJ failed to address his testimony regarding severe problems with memory, concentration, the ability to complete tasks and the need to lie down for substantial periods during the day (AR 741-45).  *Id.*

The ALJ found that plaintiff watches television, cares for his dog, reads, attends to personal care matters, visits with friends, drives, goes shopping, cooks, cleans occasionally, listens to music and pays bills (AR 30).  These findings are supported by plaintiff's daily activities questionnaire from September 1998 (AR 124-29).  The ALJ also relied upon plaintiff's treatment notes from the West Michigan Community Health Systems to support her findings that plaintiff spends time in the woods and gathers wood for the winter (AR 30, 461).  Treatment notes for July 10, 2000, indicate that plaintiff was "doing well after experiencing a positive camping weekend w/his sister, daughter and her mother" (AR 465).  The therapist's notes for July 24, 2000 reflect that plaintiff:

> Has realized that he feels better, gets more done when he gets out of bed early, then stays busy.  Recently has been gathering wood for winter, feels productive, spends time in woods, works at his own pace, enjoys nature.  Has camping plans with his daughter Labor Day because she enjoyed it so much.  Seems much more positive.

(AR 50).  The ALJ acknowledged that plaintiff denied these activities at the hearing (AR 30).

Although plaintiff testified that he does not gather wood and did not go camping, the ALJ could properly reject this testimony.  An ALJ's credibility determinations are accorded deference and not lightly discarded.  *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Hardaway v. Secretary of Health and Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987).  An ALJ may discount a claimant's credibility where the ALJ "finds contradictions

12

among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. *See also Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (ALJ may dismiss claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict).

In the present case, contradictions exist between the medical records, plaintiff's testimony and other evidence. Accordingly, the ALJ could properly discount plaintiff's credibility regarding the scope of his daily activities.

### IV. CONCLUSION

The ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision shall be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings as set forth in this opinion. A judgment order consistent with this opinion shall be issued forthwith.


Dated:  September 27, 2005          /s/ Hugh W. Brenneman, Jr.
                                    Hugh W. Brenneman, Jr.
                                    United States Magistrate Judge